Good morning, ladies and gentlemen. This first case this morning is 4-11-0294, People v. Henry Mallory. For the appellant is Barbara Gabin? Gobin. Gobin? Thank you. And for the appellee is Luke McNeil. Ms. Gabin, you may proceed. May it please the court, counsel? My name is Barbara Gobin. I represent the defendant Henry Mallory in this consolidated appeal of this post-acquittal involuntary commitment and theme date determination. As a preliminary issue, the state concedes that this court has jurisdiction over this case post People v. Harrison because even though this is acquittal, this is a determination of whether he should be committed and his length of commitment. There are three issues we ask the court to address, whether there was valid commitment proceedings in February 8, 2011, to which the state concedes error. The second issue is whether there's proper calculation of Mr. Mallory's length of commitment. And the third issue is whether he was afforded effective assistance of counsel. If you bear with me, let me give you a brief overview of these proceedings after acquittal by insanity. That would be fine. Okay. Section 5524A of the Code of Correction governs when someone's acquitted of a crime post NGRI. Evaluation's done by DHS within 30 days. And after that time of hearings to be determined whether the acquitted is in need of treatment, either outpatient or inpatient. And the Mental Health Code governs these post-acquittal proceedings unless there's a direct conflict with the criminal code. For inpatient forensic commitment, the court must determine if the person's reasonably expected to inflict serious harm upon himself or other. And this is required because of due process concerns, and the state must present clear and convincing evidence prior to this commitment. And furthermore, and the issue with this case is that once the person's committed, according to the Mental Health Code, there must be a statement on the record and order stating the court's findings of fact and conclusions of law. Once the court determines that the person is in need of inpatient hospitalization, then the court must determine the maximum period of confinement. A shorthand term of that is theme date, and I'll get further into that. In this case, my client, there's no denying that he is suffering from a mental illness. While he was in jail, he had delusional beliefs of having actually zillions of children, and that he was engaged with the FBI, CIA, and gangster disciples. Let me give you a brief time frame of where he was. So he was convicted and sentenced to the Illinois Department of Corrections for a period to conclude on April 20, 2020. So he was first sent to Dixon. At Dixon, he committed, he threw water at a prison guard, was charged with assault. Then he was transferred to Pontiac, which is this case, which happened in 2008, where he constructed a shank and threw water. Then because of the Dixon case in Lee County, he was then transferred to the custody of the Department of Human Services, and this is the key part. He was transferred there October 1, 2008. And then he was transferred to McFarland, where he is presently in the custody of the Department of Human Services since January 11, 2010. So in Lee County case, where in Dixon, he was found not guilty by reason of insanity, and the court determined that his theme date is 15 years and 6 months, his period of confinement, but that it will start from May 3, 2007. In this case, in July 27, the Livingston County Court found my client not guilty by reason of insanity, and they entered a minute order for his commitment. And then they set his theme date, the maximum period of his confinement, starting at the end of his DOC commitment, so starting in 2020 and ending in 2033. As you all know, since this is an issue of whether the court complied with the statute, it's a law subject to de novo review. And so the first issue of whether this is a proper hearing, the state concedes error that there was really no hearing. The judge said, oh, I received this letter from DHS. I guess we'll commit him. There was no stipulation of evidence. So can I just interrupt you one second? You said there was a minute order of commitment. Well, yeah, that he would ‑‑ I believe there was a minute order saying that he shall be committed, but it didn't say any findings of fact or whether he was subject to inpatient or outpatient or met the standards. You probably don't ‑‑ I know you don't have the record. I have a copy of the minute order here. If you could direct me to that, because I had trouble finding any written order of commitment. Yeah, there was ‑‑ if I can bring your attention, it's C12 on the record, and it says, see, defendant does not appear which has been furnished in attorneys based upon opinion of DHS. Defendant will be receiving inpatient treatment in a secured facility. Yeah, that's not really an order of commitment to me. But what's the ‑‑ is that a docket sheet? Yeah, that's a docket sheet. What's the date of the docket entry? I believe it's February 8th, 2011. Great. Yeah, I saw that docket entry, but that didn't ‑‑ Yeah, and that's the only thing they had. Okay. And that was C12. Gotcha. Thank you. No problem. And so the issue here, so just to reflect upon after I did the briefs, there was Beeler. In that case, post NGRI, at least the attorney stipulated to the reports, here there was no stipulation to the DHS report. But the main issue we ask for your review on this is whether there was a proper determination of Mr. Mallory's period of commitment. As I said, here the trial court began his period of commitment starting on April 20th, 2020, the end of when his DOC custody expired, instead of running it concurrently with October 1st, 2008, the date that he was transferred to the Department of Human Services. In this case, he was transferred to DHS in this case, October 1st, 2008, right? No, it was actually in the Lee County case. Okay. And the Lee County, the key part of the Lee County case is that they run concurrent with DOC, and that's why he's in McFarland. I think knowing his activity, DOC preferred him in McFarland. And DOC is considering the clock running. So they're not stopping his DOC time served while he's in McFarland. Your client was found not guilty by reason of insanity. Right. And if I understand correctly, your fundamental complaint before this court is that the trial court screwed things up thereafter, didn't conduct the hearing properly. I think that's the technical legal term. Yeah. And the state seems to have agreed, yeah, that's what happened, and we have to go back and do this over again? Right. They have to do at least the commitment hearing over again. The state disagrees on the period of time, whether it should run concurrently or consecutively after his DOC commitment. So what relief are you seeking from this court, given this situation we're in where the state is agreeing with you that it wasn't done properly? The two points of relief, a remand for a proper commitment hearing in proper order, and second part, the recalculation of the theme date, that it starts from the period of when he was in DHS in the hospital and not starting in 2020. Does that answer your question? Why wouldn't it, under your theory, let's say, why wouldn't it start from whatever date of commitment she enters, rather than a Lee County date? That's what I'm having trouble with. Well, yeah, I mean, I guess you could do, I mean, that's an alternative, the date of the commitment to Department of Human Services. My problem with this is they're putting it 13 years in the future, his commitment. Right. I'm just focusing now, though, on your start date, which you said should be October 1st when he was transferred to DHS, but that was in the Lee County case. Right. He still hasn't been properly transferred to DHS under your theory and the state's concession in this case, right? So it seems to me if we accepted your argument on the theme date, it should start whenever he's committed to DHS in the case in which he's being committed, which is the Pontiac case. Yeah, there's some case law, though, that they receive credit for time served prior to the commitment because it does take two. Well, he got that in this case, too, and so he would get credit for any time up to the time he's actually committed. Right. But is there any case law that you could find, you know, in this case, if he'd been sentenced, convicted and sentenced, his sentence would have run consecutively to the one he was serving. Right. Could you find any cases that involve a theme date in a consecutive sentencing situation? There's a couple cases. There's one case, the language of the section is if you commit a crime, multiple crimes and charged, right, let's say murder and burglary, you can only be, the theme date runs concurrently, so it's only for the most severe crime, the maximum crime. So there was one case that was Hamilton in the First District in 1984. They rejected consecutive periods of commitment under a single, like, act of crime, you know. And there's Staples, which is an Illinois Supreme Court case, that supports basically not to expand an acquittee's period of commitment. So basically, and there's two Illinois Supreme Court cases, Harrison, Jurassic, that says that this is not to punish a person but to treat them. So, but the key case would probably be Hamilton in the First District saying that, let's say you commit two crimes at the same time, it runs consecutively, I mean concurrently, not consecutively. But were the sentences in Hamilton consecutive sentences? No, it was concurrent. It was like he committed two different crimes, they charged it all in one case. And if you look at this, this court is actually, he was charging two separate crimes, but they're doing it actually concurrently because they're not doing two separate sentences. Lee County says it's concurrently with DOC. DOC considers it concurrently with his sentence. And if you think of it, the law does not, like, allow observed results. So let's say, and my client's doing better, so let's say he becomes better under Department of Human Services, and they discharge him and he goes back to prison. Does that mean in 2020 he goes back to DHS? I mean, that's a problem here. Also, the statutory scheme looks at the present person's current state of mind. They commit the person because he's currently mentally ill. So starting at 13 years ahead, the commitment period really doesn't really match the statutory scheme. And also the purpose of this is to treat the person's mental illness. So he's currently in McFarland. You know, to starting it then, if he gets well, goes back to DOC under this order, he would still go back to McFarland in 2020 even if he's well at that time. So it just really doesn't make sense. If this case gets remanded back to the trial court for a proper commitment hearing, are you going to be representing your client in the trial court? No, it will be the public defender. And that's my third argument, that there's really not effective assistance of counsel. I think there really needs to be, you know, I'm happy that these public defenders get the not guilty by reason of insanity because the person receives treatment instead of incarceration. But there's really no addressing. They think that's the end of it. And there's really, after doing these appeals, there's not that much advocacy after they get the NGRI. Here, I call it the potted plant theory, you know. I mean, did the public defender really do anything for him? Are you for lesser time or starting concurrently or even have a proper hearing? They probably don't see these cases very often. So is there no way you can represent the defendant back in the trial court? Are you not permitted to do that? Yeah, that's in a different county from our area because of limited resources. There's only six of us in the agency. I mean, if we're appointed, then. Do you correspond or talk to the public defender if this case goes back? Yeah, we're trying to do education with like actually the Illinois Bar Association Mental Health Law Committee. Last year's session was on this criminal issue and NGRI because there's just so little training. And I was going to do training for public defenders actually in the 5th District on this. But what I'm saying is this is your client on appeal. He's going to have a different lawyer back in the trial court. Do you pick up the phone and talk to the lawyer in the trial court and say, hey, take a look at this issue. Here's the cases. You might want to argue this. Yeah, I will. I will do that. I feel calls. I've actually become, I hate to say it, the guru on this minor issue. And I feel calls from public defenders on this. And I think why there needs to be guidance on how to do these cases because there's not that much case law. And to hold, you know, even if they do stipulations, but also to, you know, determine the theme date. I think there's confusion. Well, if I understand correctly, one of the difficulties with regard to the dates here is because this crime was committed. The crime of which he was found not guilty by reason of insanity was committed in the penitentiary. Right. Had he been found guilty of the aggravated battery instead of not guilty by reason of insanity of the aggravated battery, Illinois state law requires, if I understand correctly, both that the sentence imposed be consecutive to the one he was serving and that the time, the clock on that second sentence doesn't begin to run until he has completed the sentence he was then serving. Isn't that right? Right. So the question then is, if that's the rule with regard to a straight conviction, what's the rule with regard to determining how much time he shall be committed to the Department of Human Services as a result of his finding of not guilty by reason of insanity? Right. And what's your position as to when those clocks run and when they start? I think they should run concurrently. Why? Because the statute says, I mean, it does address this point, but it says if you commit multiple crimes, it's concurrent. So he's, and also the statute is for the current mental state. So if you commit him 20 years in the future, that doesn't make sense because it's his current mental state. And also the statute is meant to treat a person, not to punish. But the key part is the statute says, you know, it runs concurrent if I commit multiple crimes at the same time. Well, but you're ignoring then the statute that would require consecutive sentences had he just been convicted. Right. But that's more for an issue of punishment, I think, and deterrence. And commitment is for an issue of treatment. Well, on the other hand, if you are convicted of aggravated battery and sentenced to the penitentiary, and you are given a consecutive sentence that doesn't even begin to run until your current sentence is over, you're stuck with that sentence. Right. And ultimately even released before even his maximum date of custody? Oh, no. I'm sorry. There is a, he's going to spend time until 2020. The issue is whether he gets credit for his time in the hospital, whether it runs concurrently with his time in 2020, with his prison. So he won't be released. You mean his earlier prison sentence requires him to be there no matter what? Right. So, like, I looked at, I'm sorry to bring ex parte information. I looked at the DOC website. They say he's going to be released 2020. So it's not going to be less than 2020. And his original sentence that he was in there for would have been completed prior to 2020? No, it would be completed 2020. Oh, I thought it was. Yeah. So he would be completed 2020. You have two minutes, Counsel. Oh, I'm sorry. Before you get too far down the road, for the benefit of the audience, what is a theme date? Oh, a theme, I'm sorry. A theme date is the maximum amount a person can be committed post determination that someone is found not guilty by reason of insanity. So it's half the time of your maximum sentence minus good credit served. So it's usually half minus one. So you'd have to be released no matter what by that date. That's the theme date. Right. But if the person is still mentally ill at that time, DHS has the opportunity to file a civil commitment. And also DOC in 2020 has the opportunity to file a civil commitment. The one confusion, though, is they call it theme date versus people versus theme. But it's actually, if you look in the statute, it's period of commitment, not date of release. And I think our use of the word theme date is kind of confusing the law here. Thank you, Counsel. Mr. McNeil. May it please the Court? Counsel. So the major issue and dispute here is defendant's theme date or maximum period of commitment. And that is outlined in Section 524B. And this State has conceded the fact that things were not handled appropriately at the trial level? Pursuant to case law, yes. I would add that had the DHS reports that are in the appellate record here, had they been entered into evidence and there's some semblance of a finding of fact by the trial court and that both sides did stipulate to that evidence, which has allowed that it could have been used to establish by clear and convincing evidence that the defendant was in need of inpatient treatment. However, none of that was. It seemed like it was a rubber stamp kind of deal here, which there's plenty of case law which defendants cited that says that that won't do, especially since there's no writing, no written order or findings of fact on the record here. But as for the theme date, I'm going to say that because it's easier than the maximum period of commitment. Let me ask you this question before we get too far. On the 15-year commitment, does he get day for day on that? Yes. The actual maximum sentence he would have gotten would be 30 years. So the 15 years is the day for day. Is giving him day for day. Yeah. Because what I'm having trouble figuring out is he was scheduled to be released in 2020 on his original sentence. Correct, from the DOC. And then in 2011, he's getting a 15-year commitment. Let's say it runs concurrent. Right. So doesn't that go to 2026? Yes. I think that there was this happened quite a few years ago, and I think they're taking into account pretrial custody. Well, they gave him 192 days, so he gets one year, so you're down to 14 now. But that's an actual 14 is the maximum commitment. Okay. Isn't it?  I'm not sure of the numbers. I don't know where Ms. Goldman went, but maybe when she gets back up here, she can tell me. I think she is defendants arguing for the proposed date that you're saying, the 2026 or whatever. It would be 15 years from the finding of NGRI here, or finding of need of inpatient treatment. The actual statute in the pertinent part, the exact language, is if the court finds a defendant subject to involuntary admission, the period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, had he been convicted of and received the maximum sentence. Here, there's no question that defendant committed this offense while he was in the Department of Corrections, and that it's mandatorily required that any sentence in the Department of Correction be served consecutively. The court noted this when calculating defendant's theme date. Well, the maximum period of his sentence. And the maximum period of his sentence, you said, was 30 years, right? Correct. But the theme date is half that because of the day-to-day credit. And then when you're being committed, you're not being sentenced. Would you agree with that? Correct. But the maximum period of commitment correlates to the maximum sentence the defendant can receive. Which you've already said was 30 divided by half is 15. Correct. But what you're saying is. . . There's no dispute between. . . I think we both agree that the. . . On the period. Fifteen years. It's just whether it runs consecutively or concurrently. Concurrently. The statute. So what is the language that tells you it runs consecutively? The language is that it's the maximum length of time defendant would have been required to serve. Okay, maximum length of time he'd be required to serve. Had he been convicted of and received the maximum sentence. Here the maximum length of time would have been until 2033 because the sentence has to be mandatorily consecutive. He committed the offense in the Department of Corrections. Does it make sense to you that you would defer a commitment for mental health reasons? I think the legislature equated. . . I think the legislature, we have to presume, equated the maximum sentence someone could get with the maximum period of commitment for a reason. One would be deterrence. In this case, not. . . Well, he was acquitted. Correct. Remember, he was acquitted. Correct. Isn't the court required to have hearings every so often? Yes, every 60 days, I believe. Every 60 days? Yes. And they don't wait until 2020 to start having hearings, do they? No, he would be considered in treatment now. I think he's in McFarland now. Doesn't that give you any pause? I don't think so because, as I said, the legislature made the statute correlate to the maximum sentence a defendant could have received for a reason. There's more than one purpose in deciding a defendant needs to be in need of involuntary admission. But would consecutive sentencing make sense under the circumstance where you're dealing with somebody who was acquitted by reason of insanity and in need of treatment, found to be in need of treatment? Does consecutive imposition of a commitment period make sense? I think. . . Because you're not sentencing him. You're committing him. Yes, I think it would. I think it would be almost the same situation someone acquitted NGRI of first-degree murder, natural life, would be the maximum sentence. He's still being treated, apparently, pursuant to statute. The maximum length of time would be natural life. He's not just being treated. That's the maximum sentence for that offense. Correct. The maximum sentence for this offense. But he's not going to be committed for natural life if he recovers, right? Correct. He'll be released. Same here. That would be the same situation here. But the maximum period of commitment has to correlate to the maximum possible sentence defendant could have received by the plain language of the statute. But every 60 days or six months or whatever the time frame is, reports are being made to the court, the court's reviewing. But you're saying he's not even committed yet because the period of commitment doesn't start until 2020. That just doesn't make sense to me. No, I'm saying the maximum period of commitment doesn't end until 2033. The maximum period in this case, pursuant to statute, pursuant to the mandatorily consecutive sentence the defendant has to have, does not end until 2033. So if he's treated now, it has to be taken into account that it's not just defendant's treatment that is the only purpose here. It's also the protection of society and that individual from his potential dangerousness. That's from people versus younger men in a case. So he's being committed for longer than 15 years. Correct. But that was the maximum commitment period you said. No, the maximum commitment period. Is 30 but with the day for day is 15. But since it has to be served consecutively, you have to take into account the defendant's already existing sentence. All right. But you've told me that in the meantime he's committed to McFarland, reports are being made, she made an order of commitment, or didn't in this case but should have. So his commitment technically could run more than the 15 years. Correct. That you've told me is the maximum period of his commitment. I said the maximum sentence he could have received in terms of years is 15 after the 30. 30 years is actually it, but day for day is 15. But it has to be mandatorily consecutive. I'll point you to a case defendant cited, People versus Hughes. It was this court in 2011. There, it's the most directly on point case, not exactly on point but the most directly on point because in that case, in this one, a defendant was in the Department of Corrections, committed an offense, and was found in GRI. Although the defendant didn't raise the issue in Hughes, this court agreed that any period of commitment would run consecutive to his already existing sentence.  Yeah, it's one of those newfangled ones. Correct. 2000, ill at fourth, 100, 687. Could you say that again? Yeah. 2011, ill at fourth, 100, 687. It's cited in defendant's brief too. Okay. In retrospect, I would have emphasized it in mine, but it wasn't directly on point. But it is the most directly on point case that there is. Defendant cites no case holding the opposite. There's no case that holds a defendant who commits an offense in DOC. You said the issue wasn't even raised on appeal in Hughes. But this court does state in Hughes that as a matter of obvious fact, it would run consecutive. Defendant's commitment period would run consecutive to his already existing sentence. And, again, the People v. Youngerman states that the commitment required by Section 524 of the Code serves two purposes. It allows for the treatment of the individual's mental health and for the protection of society and that person from his potential dangerousness. The legislature presumably considered these purposes, both of these purposes, when equating the maximum sentence possible with the maximum period of commitment. Likewise, the legislature made some sentences mandatorily consecutive, just like here in the commit of the offense in the DOC. So this would be disregarding the legislature's intent, lessening both the treatment of the individual, the treatment the individual receives for this mandatorily consecutive sentence, as well as lessening the potential dangerousness, the protection of society and that individual from his potential dangerousness. And as counsel said, this is a man who's been in and out, I think, 16 offenses. He's been in and out of the mental health system for many years. So this court should recognize the plain language of Section 524 and the recent decision in Hughes, as well as the legislative intent, and determine the defendant's theme date was properly calculated. I understand that the theme date would presumably get recalculated on remand, but I think it would help in the order of opinion for guidance in this issue. If there's any other questions? No. Thank you, counsel. Ms. Colvin, any rebuttal? Just some clarification. Hughes, in that case, they didn't credit the person's time in the Department of Corrections against the theme date. So he was in the Department of Corrections, then went to DHS, and said that he should receive credit for his period of confinement in the time he was DHS and not Department of Corrections. And furthermore, DOC cannot just send someone to DHS. There has to be a commitment order. So if you think about the one in the other county, in this county, he can't, you know, if it was a normal sentencing, he would still spend time in DOC and then a commitment. But DOC can only, they can't transfer someone to DHS. There has to be a commitment order. Just to clarify, there has to be reports every 60 days. He doesn't come back up to court. If the person is found better, though, the facility director can petition for a discharge. In this case, he would be discharged back to DOC before 2020. Also, you know, the key part is I think it's the use of the term theme date. This is not sentencing. It's just a period of time he needs to be committed. And the period of time under this, we both agree, would be 15 years. He's already in DHS serving that, you know, commitment time. You know, I'm not an expert on sentencing, but I think concurrent sentencing is more of an issue of deterrence and punishment. You mean consecutive? Consecutive, sorry, consecutive, where this is for, as the counsel said, it's to protect the public and to treat the person, not to punish, not to deter. Go ahead. And I think if you look at the statute, the legislature can't think of everything. This is kind of a different situation. And but they thought of the situation when someone commits multiple crimes at the same time, it's concurrently. It's because you're only treatment for the maximum, most serious crime. And I think, you know, I think the court should follow what DOC is doing, what the Lee County doing it concurrently with this time. I wanted to ask you on those dates. He was scheduled to be released on his current prison sentence in 2020. Right. If the theme date or the period of commitment started to run when he was actually committed, and let's put aside the good time credit, let's just call it 15 years. Okay. Wouldn't he be in longer than his original sentence? Yeah, he would be in until 2022 instead of 2030, which they did this. It might even be longer than 2022 then. But I thought I had asked you that, and you said, no, he only served until 2020, and that was the end of it. Oh, no. And if he was, like, released from DHS, he would go back to DOC and then be released from DOC in 2020. Okay, I got you. But his actual commitment would run until 2026 if he's never made well. Right. Okay. You mentioned that you wouldn't be counsel on remand, that there are a lot of these cases. And I was just curious, how many not guilty by reason of insanity cases do you typically see? I've been starting to do these appeals probably maybe two to three a year. But what I see, though, and what's disturbing is I work with Alton Forensic. There's a lot of errors in calculating these theme dates. I see social workers actually calling public defenders and saying, hey, you messed up on this theme date. So DHS social workers know how to calculate it better. So that's why I think there needs to be clarification on it. Sometimes they put the whole period. Sometimes they put half. Sometimes, you know, it's really an ambiguous, not ambiguous area, but it's just not that well practiced. And, you know, I think we're starting to do more outreach on this. Okay. Thank you, counsel. Thank you. We'll take this matter under consideration and be in recess for a few moments.